**Lorraine BEGAY, Plaintiff,**

v.

**Donald HODEL, et al., Defendants.**

**Civ. No. 85–1689–PHX–CAM.**

United States District Court,
D. Arizona.

Jan. 24, 1990.

Pamela Liberty, Salese & McCarthy, P.C., Tucson, Ariz., Gary F. Smith and Robert Edward Finkelstein, DNA—People's Legal Services, Inc., Chinle, Ariz., Mary Joleen O'Neill, E.E.O.C., Phoenix, Ariz., and Daniel Mark Rosenfelt, Daniel M. Rosenfelt, P.A., Albuquerque, N.M., for plaintiff.

Arthur G. Garcia, U.S. Atty., Pamela Jole Franks and Peter Michael Balsino, Allen, Kimerer & LaVelle, Phoenix, Ariz., for defendants.

Arthur G. Garcia and Michael Robert Urman, DeConcini, McDonald, Brammer, Yewtin & Lacy, Phoenix, Ariz., for Emma Gable.

Arthur G. Garcia, Phoenix, Ariz., Marshall Alan Martin, Scottsdale, Ariz., and Daniel Mark Rosenfelt, Daniel M. Rosenfelt, P.A., Albuquerque, N.M., for Philip Hardy.

Arthur G. Garcia and Gary Harold Burger, Jones, Skelton & Hochuli, Phoenix, Ariz., for Georgia Kowena.

## MEMORANDUM AND ORDER

MUECKE, District Judge.

Having considered all the various motions filed in this matter and the oral argument presented to this Court on October 6, 1989, the Court concludes as follows:

## BACKGROUND

Lorraine Begay is a twenty-three year old Navajo woman suffering from severe arthritis. The increasing severity of her disease confined her to a wheelchair at the age of thirteen. Upon successfully completing her junior high school education without any delays resulting from her illness, Ms. Begay sought admission to the only high school in her neighborhood, Many Farms High School ("MFHS"). MFHS is a boarding school located on the Navajo reservation. It is administered by the Bureau of Indian Affairs of the Department of the Interior.

Ms. Begay was allegedly denied admission by MFHS school officials for four consecutive academic years (1981–1982, 1982–1983, 1983–1984 and 1984–1985) because the school's facilities could not accommodate her handicap. Ms. Begay alleges that school officials failed to take any meaningful action to remedy the facilities' defects. In particular, MFHS lacked adequate bathroom facilities and ramps to accommodate Ms. Begay's wheelchair.

School officials failure to renovate MFHS forced Ms. Begay to secure education outside her neighborhood (Chinle High School). Ms. Begay's home is approximately ten (10) miles from the nearest paved highway. Her commute to school entailed daily travel on poorly surfaced roads which, due to her severely arthritic condition, caused her great physical and emotional pain. When the weather is bad, the roads become impassable, making it impossible for the van that transports Ms. Begay to school to get to Ms. Begay's home. Although Ms. Begay endured this situation for two years, her academic performance plummeted, and in October 1983, she withdrew from school. In part, Ms. Begay's poor academic performance was due to excessive absences.

After several more fruitless attempts to secure enrollment at MFHS, on July 19, 1985, Ms. Begay elected to file this lawsuit. Pursuant to the Court Order of August 13, 1985, Ms. Begay was finally admitted to MFHS as a full-time residential student. She graduated in May, 1987—two years late.

Ms. Begay asserts claims under the Education of All Handicapped Children Act ("EHA"), 20 U.S.C. § 1400 *et seq.*, § 504 of the Rehabilitation Act, 29 U.S.C. § 794,[1] and the fifth amendment due process clause. Defendants, who initially were rep-

---

1. Section 504 of the Rehabilitation Act provides in pertinent part:
    No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency....
   29 U.S.C. § 794.

resented by the United States Attorney and are now represented by individual attorneys, filed four (4) motions for summary judgment on qualified immunity grounds and one joint motion for summary judgment for all defendants based on various grounds. In her pre-trial Motion, Ms. Begay argues that defendants should be prohibited from presenting any further argument(s) on the issue of qualified immunity on the grounds that this Court has already decided the issue and, alternatively, defendants have waived the qualified immunity defense. Ms. Begay also requests reinstatement of her equal protection claim.

## ANALYSIS

### I. *Plaintiff's Pre–Trial Motion*

#### A. *Qualified Immunity*

The qualified immunity issue has had a somewhat extensive procedural history. On September 5, 1985, defendants filed a motion to dismiss pursuant to Rule 12(b)(6) based on the immunity of federal officials to claims where the plaintiff's rights are not clearly established. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (government officials subject to damage awards when in violation of clearly established law). On December 17, 1985, following supplemental briefing on the qualified immunity issue, Judge Copple treated defendants' motion to dismiss as a motion for summary judgment[2] and disposed of the immunity defense. Memorandum and Order of Dec. 17, 1985, at 2.

The defendants appealed Judge Copple's dismissal of the qualified immunity argument pursuant to *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), which authorizes an interlocutory appeal upon a denial of a qualified immuni-

ty claim, to the extent that it turns on an issue of law.[3] The Ninth Circuit, in an unpublished memorandum decision, reversed and remanded[4] because "[t]he district court did not give the parties a reasonable opportunity to file affidavits or other evidence, as required by Rule 12(b)(6), after it determined that the motion to dismiss should be treated as a motion for summary judgment." Ninth Circuit Order of March 16, 1987, at 3. In effect, the Ninth Circuit remanded because the Court failed to provide defendants the opportunity to support their qualified immunity argument and accordingly directed this Court "to order the defendants to file affidavits in support of their motion and to permit the plaintiff to file in opposition thereto." *Id.*

After considering the Ninth Circuit's mandate, this Court directed defendants to file a motion for summary judgment by June 22, 1987. The Court ordered defendants to *"include each and every argument they wish to make such that the Court need not refer to the defendants' initial motion to dismiss or supplemental memorandum."* Order of May 8, 1987, at 2 (emphasis added). In effect, since the motion to dismiss (which was treated as a motion for summary judgment) was based on qualified immunity grounds, this Court was ordering defendants to file a summary judgment motion based on the qualified immunity defense.

Defendants' summary judgment motion did not address the qualified immunity issue. Instead, defendants argued, *inter alia*, that the Rehabilitation Act did not place the burden of making schools accessible on individual defendants, and that Ms. Begay's damages claim was not governed by the EHA's non-preemption amendment. The Court's Order of August 5, 1988, ad-

---

**2.** Under Rule 12(b)(6), a district court may treat a motion to dismiss as one for summary judgment if "matters outside the pleadings are presented and not excluded by the court." Fed. R.Civ.P. 12(b)(6). Rule 12(b)(6) also requires that where a motion to dismiss is treated as a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.*

**3.** "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1281 notwithstanding the absence of a final judgment." *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817.

**4.** Judge Copple recused himself and the case was assigned to this Court.

dressing the summary judgment motion, stated: "Because the Defendants' memorandum in support of their Motion fails to even cite *Harlow* or any other case requiring qualified immunity, *despite this Court's May Order requiring an integrated motion*, this Court concludes that the Defendants have abandoned their *Harlow* defense." Order of August 5, 1988, at 2, n. 2 (emphasis added).

Defendants argue that qualified immunity is a non-waivable defense. Therefore, they argue that this Court should not preclude further argument or written motions on qualified immunity.

"Qualified … immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982) (citing *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)); *Kelson v. City of Springfield*, 767 F.2d 651, 657 (9th Cir.1985); 5 Wright & Miller, *Federal Practice & Procedure*, § 1278 (West Supp.1989). "Generally, a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case." 5 Wright & Miller, *Federal Practice & Procedure*, § 1278 (West 1969).

Defendants cite cases that "contemplate that a motion based on qualified immunity can be repeatedly brought." Defendants' Supplemental Memorandum, at 3. However, those cases do not address the issue of whether the qualified immunity defense can be waived. In *McSurely v. McClellan*, 697 F.2d 309 (D.C.Cir.1982), the appellate court affirmed the district court's denial of summary judgment on qualified immunity. The court stated that its holding did not prevent the district court from ruling on

the issue of qualified immunity if there was additional evidence. *Id.* at 325. The appellate court did not address the waivability of the qualified immunity defense, and indeed, there was no issue since the defendant in that case filed a motion for summary judgment based on qualified immunity. Here, defendants were ordered by both the Ninth Circuit and this Court to file a summary judgment motion based on qualified immunity, which defendants did not do.

■ The Court recognizes that it was the United States Attorney who failed to argue the qualified immunity summary judgment motion.[5] Although the facts appear to be sufficient for this Court to find that defendants have waived the qualified immunity defense, the Court, at this point, is unwilling to find such a waiver.[6] However, in light of the Ninth Circuit mandate and this Court's order of May 8, 1987 requiring defendants to brief the qualified immunity issue, the Court will deny defendants' motions for summary judgment based on qualified immunity on the ground that defendants failed to comply with the Court's Order. The Court interprets defendants' failure to brief the qualified immunity issue as a violation of its Order mandating that defendants brief the issue. Arguably, the U.S. Attorney could have believed that it was unnecessary to file a qualified immunity summary judgment motion because he or she believed there was a genuine issue of material fact in dispute. The Court, however, has no basis to make that determination since defendants' current attorneys did not provide any evidence or affidavits from the U.S. Attorney stating the reasons why the U.S. Attorney failed to brief the qualified immunity issue.[7] Moreover, if one assumes that the U.S. Attorney

---

5. Perhaps defendants should attempt to seek a remedy against the U.S. Attorney.

6. The Court has not yet determined whether, for purposes of trial, it will find the defense of qualified immunity to be waived. Arguably, the Court's finding that defendants "abandoned their *Harlow* defense" is the law of the case since defendants did not challenge the Court's ruling within the applicable time limits.

7. The Court also notes that plaintiff, in her opposition to the summary judgment motion

which failed to brief qualified immunity, directly addressed the issue of qualified immunity. See Plaintiff's Opposition to Defendants' Motion for Summary Judgment & Cross–Motion for Partial Summary Judgment (filed Aug. 10, 1987), at 3–4. Thus, the U.S. Attorney was again put on notice and again failed to address the qualified immunity in his Reply. See Reply to Response to Defendant's Motion for Summary Judgment (filed Aug. 31, 1987).

**1006**

believed there was a genuine issue of material fact as to the qualified immunity issue, there is no reason to believe that the U.S. Attorney's conclusion is any less valid at this time.

### B. *Reinstatement of Equal Protection Claim*

■ Count three of plaintiff's complaint stated a claim based on the Equal Protection Clause. Judge Copple dismissed the claim pursuant to *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), which held that "where the EHA is available to a handicapped child asserting a right ... based either on the EHA or on the Equal Protection Clause of the Fourteenth Amendment, the EHA is the exclusive avenue through which the child and his parents or guardian can pursue their claim." 468 U.S. at 1013, 104 S.Ct. at 3469.

In response to *Smith,* Congress enacted the Handicapped Children's Protection ("HCPA") in 1986.[8] The HCPA added a new section [615(f)] to the EHA, which provides as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 790 et seq.], or other Federal statutes protecting the rights of handicapped children and youth [except that exhaustion of administrative procedures shall be required to the extent required by the EHA.]

20 U.S.C. § 1415(f). The intent of the HCPA with respect to the EHA and its relationship to other laws was made clear by Congress. The House Report states that section 615(f)

> re-establishes the relationship between [the EHA] and section 504 and other statutes of handicapped children that existed prior to the Supreme Court's decision in *Smith v. Robinson,* thereby reaffirming the viability of section 504 and other federal statutes such as 42 U.S.C. § 1983 as separate from but equally viable with [the EHA] as vehicles for secur-

ing the rights of handicapped children and youth.

H.R.Rep. No. 296, 99th Cong., 1st Sess. 6 (1985), U.S.Code Cong. & Admin.News 1986, p. 1798. In effect, Congress, through section 615(f), chose to recognize the continued availability of other causes of action. Further, the express language of section 615(f) concerns specific aspects of several identified statutory alternatives, i.e., "rights, procedures, and remedies." The statute states that "nothing in this chapter shall be construed to restrict or limit" those rights. In light of Congress' clear intent to allow other causes of action to be pursued in conjunction with the EHA, the Court concludes that plaintiff is not precluded from pursuing her equal protection claim.

■ Still, the issue remains whether the Court should grant plaintiff leave to amend her complaint to add the equal protection claim. Defendants argue that there is no factual basis for the addition of an equal protection claim. Indeed, at this late stage in the case, the Court is reluctant to allow the addition of the equal protection claim if it raises new factual issues that require additional discovery. However, plaintiff has avowed to this Court that no further discovery would be required. Further, "denial of leave to amend is generally considered an abuse of discretion where the amendment seeks no more than to add a new legal theory supported by factual issues in the case." *Owen v. Superior Court,* 133 Ariz. 75, 80, 649 P.2d 278 (1982). Accordingly, the Court will allow the addition of the equal protection claim subject to the condition that no further discovery will be allowed to pursue the claim.

### II. *Motion for Summary Judgment for All Defendants*

#### A. *The Bivens Claim*

Defendants argue that Ms. Begay's *Bivens* claim pursuant to the fifth amendment due process clause should be dismissed because the EHA is the plaintiff's exclusive remedy. They argue that the

---

**8.** Pub.L. No. 99–372, Act of Aug. 5, 1986, 100 Stat. 796.

EHA, as a "comprehensive scheme designed by Congress" to "protect the right of a handicapped child to a free appropriate public education" precludes a *Bivens* claim under the due process clause.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the U.S. Supreme Court ruled that federal officials can be sued for damages under the fourth amendment. *Bivens* held that in appropriate circumstances, a district court may provide damages for the violation of constitutional rights if there are "no special factors counselling hesitation in the absence of affirmative action by Congress." 403 U.S. at 396, 91 S.Ct. at 2005. In short, the *Bivens* Court recognized the availability of constitutional damages claims against federal officials.[9]

Similarly, in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Supreme Court recognized a constitutional damages claim based on the fifth amendment's implicit equal protection guarantee. This case involved a former congressional staff member who alleged that defendant, a United States Congressman, had discriminated against plaintiff on the basis of her sex. Citing *Bivens*, the Court emphasized that there was " 'no *explicit* congressional declaration that persons' in petitioner's position injured by unconstitutional federal employment discrimination 'may not recover money damages from' those responsible for the injury." 442 U.S. at 246–47, 99 S.Ct. at 2278. Further, the Court stated that "were Congress to create equally effective alternative remedies, the need for damages relief might be obviated." 442 U.S. at 248, 99 S.Ct. at 2278.

Unlike *Bivens* and *Davis*, the Supreme Court's more recent decisions have rejected constitutional damages claims. In *Bush v.*

*Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Court dismissed a federal civil servant's action alleging a violation of his first amendment rights. The Court denied plaintiff's action despite its conclusion that the available administrative remedies "did not fully compensate him for the harm he suffered." 462 U.S. at 372, 103 S.Ct. at 2408. Though plaintiff's remedy was "less than complete," 462 U.S. at 373, 103 S.Ct. at 2409, the Court dismissed plaintiff's action on "special factors" grounds. The Court was unwilling to interfere with "federal personnel policy." The Court stated that "Congress is in a better position to decide whether or not public interest would be served by creating [a damages claim]." 462 U.S. at 390, 103 S.Ct. at 2417.

In *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), plaintiff challenged the denial of social security disability benefits based on the due process clause of the fifth amendment. The thrust of plaintiffs' complaint was that the government officials had adopted illegal policies (e.g., the use of an impermissible quota system) that intentionally deprived them of disability benefits. *Id.* 108 S.Ct. at 2465. The Court held that no *Bivens* remedy would be allowed for the denial of disability benefits. *Id.* at 2466. Like *Bush*, *Chilicky* was dismissed on special factors grounds. The Court stated that *Chilicky* could not "reasonably be distinguished from *Bush v. Lucas*." *Id.* at 2468. The Court made this finding even though the *Chilicky* plaintiffs could not obtain relief "for unconstitutional deprivation of a statutory right." *Id.* at 2469.

The *Chilicky* Court extended the special factors exception to "include an appropriate judicial deference to indications that congressional inaction has not been inadvertent."[10] *Id.* at 2468. "When the design

---

9. Of course, constitutional damages claims are not unusual. Title 42, section 1983 authorizes an action for money damages against any "person" who, acting "under color of" state law, denies any federal right. "*Bivens* created an analogous cause of action against federal officials." Jeffries, "Compensation for Constitutional Torts: Reflections on the Significance of Fault," 88 *Mich.L.Rev.* 82, 83 (1989).

10. In effect, the Supreme Court now treats silence by Congress as tantamount to a congressional declaration that no *Bivens* remedy should be acknowledged. *See Id.* 108 S.Ct. at 2470–71. Arguably, the expansive special factors analysis, i.e., whether Congress's silence has been inadvertent, indicated by *Chilicky* creates a presumption that courts should defer to Congress as the

of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Id.*

The *Bivens* line of cases suggests two dispositive factors. First, it must be determined whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2005. In addition, this factor must "include an appropriate judicial deference to indications that congressional inaction has not been inadvertent." *Chilicky*, 108 S.Ct. at 2468. Second, a *Bivens* claim will be denied if Congress has provided an alternative remedy or clearly indicated that judicial power should not be exercised.

Defendants did not address whether there are special factors in this case which prevent the maintenance of a *Bivens* claim. The Court believes that there are no special factors counselling hesitation for the EHA is not a uniquely federal program. It applies to "all handicapped children" and it is intended to "assist States and localities to provide for the education of all handicapped children...." 20 U.S.C. § 1400(c).

Still, "an appropriate judicial deference to indications that congressional inaction has not been inadvertent," *Chilicky*, 108 S.Ct. at 2468, suggests that the failure to provide damages under the EHA was not inadvertent. When Congress enacted the HCPA in 1986, it specifically allowed claims under the Rehabilitation Act, 29 U.S.C. § 790 et seq. and the Civil Rights Act of 1871.[11] Under the Rehabilitation Act [12] and section 1983, monetary damages are available. In addition, the HCPA allowed recovery of attorneys fees. Under 20 U.S.C. § 1415(e)(4)(B) of the EHA, a "court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardians of a handicapped child or youth who is the prevailing party."

It does not seem inadvertent that in response to *Smith*, Congress would enact the HCPA to allow monetary remedies under federal civil rights laws and attorneys fees under the EHA and *not* provide specifically for monetary damages if such damages were indeed intended. Most of the case law,[13] which Congress was aware of when it enacted the HCPA indicates that monetary damages are not available for a violation of the EHA. For example, in *Marvin H. v. Austin Independent School District*, 714 F.2d 1348 (5th Cir.1983), the court held that section 1983 could not be the statutory basis for a violation of the EHA. *Id.* at 1357–58. The court indicated that allowing damages pursuant to section 1983 would impair the effectiveness of the injunctive relief and procedural safeguards provided by the EHA. *Id.* at 1358. *See also Anderson v. Thompson*, 658 F.2d 1205, 1214–17 (7th Cir.1981).

The case law, however, has generally been consistent in holding that claims based on alternative constitutional or statu-

ultimate authority concerning the national interest. This presumption appears to be inconsistent with the underlying principles of judicial review for it is clear that when constitutional liberties are at stake, the Constitution and our historical governmental traditions indicate that the judicial branch must have the final say. *See generally*, Redish, *Federal Courts: Cases, Comments and Questions*, 553–57 (2nd ed. 1989).

**11.** Now codified at 42 U.S.C. § 1983 ("section 1983"). Section 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

**12.** Section 505 of the Rehabilitation Act provides that remedies available under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*) are available for a Rehabilitation Act claim.

**13.** The case law generally concerns damages under section 1983. The Court sees no reason why constitutional damages claims against federal officials should be treated any differently than analogous actions aimed at local or state officials under section 1983 in determining whether damages are allowed under the EHA.

tory violations can be raised pursuant to section 1983 in the context of an EHA claim. In particular, the cases concern procedural due process claims. *See Marvin H.,* 714 F.2d at 1357 (an EHA claim does not preclude an additional claim under section 1983 for a violation of constitutional rights); *Quackenbush v. Johnson City School District,* 716 F.2d 141, 147–48 (2nd Cir.1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984) (deliberate interference with EHA's procedural safeguards can be the basis for a section 1983 claim); *Manecke v. School Board of Pinellas County, Fl.,* 762 F.2d 912, 919–20 (11th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986) (denial of due process in EHA claim can be the basis for a section 1983 claim); *Jose P. v. Ambach,* 669 F.2d 865 (2nd Cir.1982) (procedural due process violation stated where hearing opportunities not available); *see also Diane P. v. Alief Independent School Dist.,* 744 F.2d 484 (5th Cir.1984) (remanding for determination of whether procedural due process claim was stated as a result of school's failure to notify parents of meetings); *Barbara R. v. Tirozzi,* 665 F.Supp. 141 (D.Conn.1987) (plaintiff alleged defendants' failure to hold hearings and appoint independent hearing officer).

It should be noted that recent cases have held that a violation of the EHA can form the basis of a section 1983 claim. In *Mrs. W. v. Tirozzi,* 832 F.2d 748 (2nd Cir.1987), plaintiffs alleged that defendant board of education did not implement the procedures required by the EHA and failed to fairly and adequately resolve parental complaints, which plaintiffs argued, rendered the due process procedures a nullity. The Second Circuit held that "parents are entitled to bring a § 1983 action based on alleged violation of the EHA Due Process and Equal Protection clauses of the federal Constitution." *Id.* at 755. *See also Board of Education of East Windsor Regional School v. Diamond,* 808 F.2d 987 (3rd Cir. 1986) (court allowed a violation of the EHA to form the basis of a section 1983 claim); *Rose v. Nebraska,* 748 F.2d 1258 (8th Cir. 1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 50 (1985) (the court, in dicta, indicated that a cause of action would be available under section 1983 where procedural violations are based on same set of facts which give rise to EHA violation).

Here, Ms. Begay alleges that defendants violated her procedural due process rights when they denied her the procedural rights required by the EHA. In particular, Ms. Begay alleges that defendants failed "to apprise her of her procedural rights with reference to obtaining an appropriate educational placement, or to provide any meaningful access to those procedures." Plaintiff's Response, at 2. Ms. Begay's claim appears to be sufficient to constitute a constitutional violation within the context of an EHA claim. *See Marvin H. supra; Ouackenbush, supra; Manecke supra.* The Court sees no reason why damages should be allowed against state officials and not against federal officials who administer programs pursuant to the same statute. It is unreasonable to assume that Congress would provide greater protections for handicapped children who participate in state EHA programs than children who participate in federal EHA programs. The EHA is concerned with the education of *all* handicapped children, which, depending on their particular circumstances, may be entrusted to a state, a department of the United States or a local educational agency. There is simply no reason to conclude that children who deal with a federal educational agency should occupy an inferior legal position than children who deal with a state educational agency for the EHA is not simply a funding statute; rather, it provides handicapped children with an enforceable substantive right to "a free appropriate public education." [14] 20 U.S.C. § 1400(c);

---

**14.** "Congress did not content itself with passage of a single family funding statute. Rather, the EHA confers upon disabled students an enforceable substantive right to public education in participating States, [citation omitted] and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). Congress has not declared nor is there any reason to believe that disabled children in EHA programs administered by federal agencies

*See Board of Education of Hendrick Hudson Central School Dist. v. Rowley,* 458 U.S. 176, 191–204, 102 S.Ct. 3034, 3043–50, 73 L.Ed.2d 690 (1982).

Moreover, there has been no clear indication that judicial power should not be exercised. When Congress enacted the HCPA in 1986, it was aware of the case law that section 1983 damages could be recovered for a constitutional violation within the context of an EHA claim. Indeed, the main reasons why Congress enacted the HCPA was to "reestablish statutory rights repealed by the U.S. Supreme Court in *Smith v. Robinson*" and to "reaffirm, in light of this decision, the viability of section 504, 42 U.S.C. § 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children." H.R.Rep. No. 296, 99 Cong., 1st Sess. 4 (1985).

■ In short, the Court concludes that there is a sufficient basis to support a constitutional damages claim within the context of an EHA claim.[15] The thrust of this conclusion is that a *Bivens* remedy will be allowed if plaintiff can prove at trial that defendants' conduct amounted to a constitutional violation within the context of an EHA claim. If plaintiff cannot prove that defendants' conduct constitutes a constitutional violation beyond an EHA violation, then a *Bivens* remedy will not be allowed. In *Doe v. Maher,* 795 F.2d 787 (1986), *aff'd on other grounds sub nom., Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), the Ninth Circuit declined to accept plaintiffs' invitation to equate violations of statutory procedural rights with violations of the Constitution, stating that "[i]f every failure to abide by [EHA] procedures were to raise constitutional due process problems, nearly all [EHA] cases would be controverted into constitutional disputes." *Id.* at 791; *See*

*e.g., Edward B. v. Paul,* 814 F.2d 52 (1st Cir.1987) (no violation of due process when written transcript of administrative proceedings not provided to plaintiffs).

**B.** *Whether Plaintiff's Section 504 Damage Claims are Barred by the Applicable Statute of Limitations*

■ Section 504 of the Rehabilitation Act contains no statute of limitations for filing an action. When Congress has provided no express statute of limitations, the general practice in federal courts is to turn to state law as the source of applicable statutes of limitations and related tolling rules. *DelCostello v. Teamsters,* 462 U.S. 151, 159 & n. 12, 103 S.Ct. 2281, 2287–88 & n. 12, 76 L.Ed.2d 476 (1983); *Board of Regents, etc. v. Tomanio,* 446 U.S. 478, 483–85, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980). As part of this "borrowing" process, courts should identify analogous state claims and associated statute of limitations, and determine whether the associated limitations period is inconsistent with the federal policy underlying the subject federal statutory scheme. *See County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 240, 105 S.Ct. 1245, 1254, 84 L.Ed.2d 169 (1985) ("the general rule is that a state limitations period for an analogous cause of action is borrowed and applied to the federal claim, provided that the application of the state statute would not be inconsistent with underlying federal policies").

Defendants argue that section 504 creates substantive rights and should therefore be governed by A.R.S. § 12–541(3),[16] Arizona's one-year statute of limitations for actions created by statute. Under this interpretation, plaintiff's claim for the 1981–1982 and 1982–1983 school years are time barred.[17] Defendants further argue

---

are any less entitled to the substantive and procedural rights provided by the EHA.

**15.** Arguably, there is also authority that an EHA violation may form the basis for a constitutional damages claim. *See Diamond supra* and *Mrs. W. v. Tirozzi supra.*

**16.** A.R.S. § 12–541 provides in pertinent part: There shall be commenced and prosecuted within one year after the cause of action ac-

crues, and not afterward, the following actions:

.　　.　　.　　.　　.

3. Upon a liability created by statute, other than a penalty or forfeiture.
A.R.S. § 12–541(3) (West 1982).

**17.** Plaintiff alleges that she was denied admission to MFHS in the 1981–1982, 1982–1983, 1983–1984 and 1984–1985 school year. Plaintiff

that § 504 claims are *not* all founded in personal injury, thereby making it clear that the statute of limitations for personal injury claims should not be applied.

Regardless of whether the one-year statute of limitations or, as plaintiff argues, the two-year limitations period [18] applies, the result is the same: plaintiff's claims for the 1983–1984 and 1984–1985 academic years are not time barred by any statute of limitations. See Defendants' Motion for Summary Judgment by All Defendants, at 7 and Amended Plaintiff's Response, at 13. Since the result is the same under either limitations period, the Court need not decide the applicable statute of limitations period for purposes of § 504 claims.

However, the Court must still determine whether plaintiff's claims for the 1981–1982 and 1982–1983 school years are time barred. The issue is whether the claims could not be tolled until fall, 1984, the last academic year in which plaintiff was denied admission to MFHS. Plaintiff argues, *inter alia*, that under the doctrine of equitable estoppel, her § 504 claims accruing before the 1983–1984 school year were not tolled until fall, 1984.

With regard to tolling and equitable estoppel, it has been stated:

Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended.... Equitable estoppel, however, is a different matter. It is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a

defense to an admittedly untimely action because his conduct has induced another into forebearing suit within the applicable limitations period. Its application is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice.

*Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067, 1070 (7th Cir.1978). In addition, "it is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay. (citations omitted). Rather, all that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations in forebearing suit." *Id.* at 1071.

A motion for summary judgment is simply to determine whether a triable factual issue exists. It is not intended to resolve that issue. *See Federal Laboratories v. Barringer Research Ltd.,* 696 F.2d 271, 274 (3rd Cir.1982). "The burden is on the plaintiff to present facts ... which, if true, would require a court as a matter of law to estop the defendant from asserting the statute of limitations." *Burke v. Gateway Clipper, Inc.,* 441 F.2d 946, 948–49 (3rd Cir.1971). Here, the record provides sufficient facts to possibly warrant the application of equitable estoppel to this case. Plaintiff was repeatedly told, year after year, by MFHS officials that repairs to the buildings were underway and would be completed in time for the "next school year." In addition, there is also a material issue of fact as to whether plaintiff "reasonably relied" on defendants' representations that MFHS would be made accessible for plaintiff.[19]

---

filed her complaint on July 19, 1985. She turned 18 years of age on April 30, 1983.

**18.** Plaintiff argues that the appropriate statute of limitations period is two years pursuant to A.R.S. § 12–542, which provides in pertinent part:

[T]here shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

1. For injuries done to the person of another.... 

A.R.S. § 12–542 (West Supp.1989).

**19.** Defendants raised the reasonable reliance issue in their Reply brief. Defendants have alleged sufficient facts to raise a material issue of fact as to whether plaintiff reasonably relied on defendants' representations.

In short, the Court will deny summary judgment as to the statute of limitations for section 504. The record provides a sufficient basis to raise a material issue of fact as to whether the doctrine of equitable estoppel applies to this case. If the doctrine applies, there is also a sufficient basis to raise a genuine issue of material fact as to whether plaintiff reasonably relied on defendants' representations in forbearing suit.

## C. *Exhaustion of Administrative Remedies*

■ Section 615(f) of the EHA provides, in pertinent part that

before the filing of a civil action under [the Constitution, title V of the Rehabilitation Act of 1973, or other federal statutes protecting the rights of handicapped children and youth] the procedures under subsection (b)(2) and (c) [concerned with due process hearings and state-level administrative review] shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C. § 1415(f). Defendants argue that this case should be dismissed because Ms. Begay never exhausted administrative remedies.

The Court is confused as to why defendants assert an exhaustion argument at this late stage of the litigation. Given that Ms. Begay has, pursuant to a Court Order, been admitted to *and* graduated from MFHS, the viability of an exhaustion argument appears to be less than clear. The Court believes that defendants' exhaustion argument, at this stage in the case, is moot and will therefore deny defendants' exhaustion argument.

Further, the Court briefly notes that even if defendants' exhaustion argument were not moot, the Court would still deny defendants' summary judgment motion because there is a material issue of fact as to whether defendants failed to advise plaintiff of her procedural rights under the EHA, or provide her with any meaningful access to the EHA's procedural protections. "Congress must not have intended the

EHA to be the exclusive method to redress *denial of access* to that very mechanism." *Manecke,* 762 F.2d at 919. Ms. Begay could not have exhausted her administrative remedies because defendants failed to provide her with any meaningful access to the EHA's administrative procedure. Further, defendants repeated denials of Ms. Begay's requests indicate that resort to the administrative procedure would have been futile. *See Loughran v. Flanders,* 470 F.Supp. 110 (D.Conn.1979). Finally, it is questionable whether exhaustion is required where, as in the instant case, issues as to the availability of a private right of action for damages can only be answered by a court. *See e.g., Id.; cf. Hark v. School District of Philadelphia,* 505 F.Supp. 727 (E.D.Pa.1980) (exhaustion not required where hearing officer lacked authority to grant compensatory relief).

## D. *Sovereign Immunity*

Defendants argue that they are entitled to sovereign immunity for all allegations under the Rehabilitation Act. They assert that "[i]ndividual federal officials cannot be held personally liable pursuant to Section 504 because such actions are considered to be suits against the United States and, thus, barred if the United States is the real and substantial party in interest." Defendants' Motion, at 19.

■ In an action against a federal official, the court must determine whether the suit is in reality a suit against the individual or against the federal government. *See Hill v. U.S.,* 571 F.2d 1098 (9th Cir.1978) (claim for back pay against individual defendants must be considered a suit against the U.S. since back pay would come from the federal treasury); *See Falls Riverway Realty v. City of Niagara Falls,* 754 F.2d 49 (2nd Cir.1985) (remanding for determination of whether damages would be satisfied from funds under HUD's control or from general treasury revenue). Sovereign immunity does not apply if the action is not really against the United States. *Blackburn v. Goodwin,* 608 F.2d 919 (2nd Cir. 1979) (no sovereign immunity in action against FBI official in his individual capaci-

ty when relief was not payable from public treasury); *Group Health, Inc. v. Blue Cross Ass'n,* 625 F.Supp. 69 (S.D.N.Y. 1985), *appeal dismissed,* 793 F.2d 491 (2nd Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 758 (1987).

The seminal case concerning sovereign immunity is *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In *Larson,* the plaintiff sued the Administrator of the War Assets Administration claiming that the Administrator had violated a contract for surplus coal. Plaintiff sought an injunction that would prohibit the Administrator from selling the coal to anyone else. The Supreme Court held that plaintiff's action was a suit against the sovereign and should be dismissed. The Court reasoned that although a suit for payment of damages against the individual defendant could be maintained without disturbing the sovereign, the specific relief sought in this case, i.e., not to sell coal to anyone else, would affect the sovereign's interests in some manner. 337 U.S. at 688–89, 69 S.Ct. at 1461.

The Court also indicated that suits for specific relief would *not* be barred by sovereign immunity if the official acted in his individual capacity or outside the scope of his or her statutory authority. 337 U.S. at 689, 69 S.Ct. at 1461. An official who acts outside the scope of his or her authority lacks any "delegated power" and "[a] claim of error in the exercise of that power is therefore not sufficient" to entitle the official to sovereign immunity. 337 U.S. at 690, 69 S.Ct. at 1461; *See also Aminoil U.S.A., Inc. v. California Water Resources Control Bd.,* 674 F.2d 1227 (9th Cir.1982). Further, it is not sufficient to

demonstrate that an individual defendant is acting outside the scope of his or her authority by showing that the defendant's acts were wrongful.[20] *Larson,* 337 U.S. at 695, 69 S.Ct. at 1464 ("if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law, if they would be regarded as the actions of a private principal under the normal rules of agency"); *See U.S. v. Yakima Tribal Court,* 806 F.2d 853, 860 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987). Finally, the *Larson* Court noted that sovereign immunity is not applicable in an action against a federal official whose actions are unconstitutional, even if the official was acting within the scope of his or her authority. 337 U.S. at 690, 69 S.Ct. at 1461–62.

Here, Ms. Begay seeks damages against defendants in their individual, rather than representative, capacities. *See Clark v. Library of Congress,* 750 F.2d 89, 103 (D.C.Cir.1984) ("If a plaintiff seeks to recover damages from a defendant in his personal, individual capacity then there is no sovereign immunity bar. Sovereign immunity, however, does bar suits for money damages against officials in their *official* capacity absent a specific waiver by the government."); *See also Silva v. Brock,* 677 F.Supp. 55 (D.C.Mass.1988). She does not seek any form of "specific relief" that, if granted, " 'would expend itself on the public treasury or domain, or interfere with the public administration,' or ... 'restrain the Government from acting, or compel it to act.' " *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908 n. 11, 79 L.Ed.2d 67

---

20. *But see* Byse, "Proposed Reforms in Federal 'Nonstatutory' Judicial Review: Sovereign Immunity, Indispensable Parties, Mandamus," 75 *Harv.L.Rev.* 1479 (1962), where the author states:

The vice of *Larson* and its progeny is that they permit—perhaps even encourage—courts to shirk the hard task of determining the limits of official power. It is perfectly possible for a court to hold that an official has authority to make erroneous as well as correct determinations.

. . . . .

[T]he courts seem to interpret the statutes cursorily to authorize the defendant official to act in the "general" area in question; so long as the official remains within the "general" area, his erroneous acts are unreviewable whether or not the statute properly construed was intended to confer such an unreviewable discretion. This ... is an abdication of judicial responsibility.

*Id.* at 1490–91.

(1984) (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1983)).

In addition, as stated earlier, sovereign immunity is precluded where the official acts outside the scope of his or her authority. *Larson, supra; Yakima Tribal Court*, 806 F.2d at 859. Plaintiff's facts, if proven at trial, provide a sufficient basis to show that defendants were acting outside the scope of their authority. "[S]uits against an officer of the government are not considered suits against the government when the officer's powers are limited by statute and the actions are beyond those limitations...." *Martinez v. Marshall*, 573 F.2d 555, 560 (9th Cir.1977); *See also McClellan v. Kimball*, 623 F.2d 83 (9th Cir.1980). Plaintiff's facts, if true, indicate that defendants acted outside the scope of their authority when they denied her a meaningful education program, *see Patton v. Dumpson*, 498 F.Supp. 933 (S.D.N.Y. 1980) (plaintiff allowed to maintain an action for damages for Rehabilitation Act violation on ground that plaintiff was denied a meaningful education program), or an appropriate education. *See Sanders v. Marquette Pub. Schs.*, 561 F.Supp. 1361 (W.D.Mich.1983); *Boxall v. Sequoia Union High Sch. Dist.*, 464 F.Supp. 1104 (N.D.Cal. 1979) (plaintiff allowed to maintain action for damages under Rehabilitation Act for denial of a meaningful educational program).

Finally, even assuming defendants were acting within the scope of their authority, the Court believes there is a material issue of fact as to whether defendants' acts were unconstitutional. Sovereign immunity does not apply where officials, who are within the scope of their authority, act unconstitutionally. *Larson*, 337 U.S. at 690, 69 S.Ct. at 1461–62; *Beller v. Middendorf*, 632 F.2d 788 (9th Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *Ogden v. U.S.*, 758 F.2d 1168 (7th Cir.1985) (sovereign immunity does not apply where a plaintiff claims that a government official acting within the scope of his or her au-

thority has acted in violation of the Constitution or statutory authority).

In short, the Court will deny defendants' summary judgment motion as to their sovereign immunity claims. The Court finds that plaintiff's § 504 claims are not directed against the United States nor do they affect the interests of the United States. Accordingly, defendants are not entitled to the defense of sovereign immunity.

### E. *Intentional Conduct*

Defendants argue that plaintiffs due process and Rehabilitation Act claims should be disallowed because plaintiff has been unable to meet her burden of proof requiring intentional conduct on the part of the defendants.

#### 1. *Rehabilitation Act Claim*

■ Defendants are incorrect in arguing that proof of discriminatory intent is necessary to state a claim under § 504. In *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), Justice Marshall stated that "much of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent." 469 U.S. at 296–97, 105 S.Ct. at 718. However, the *Alexander* Court also found "troubling" the position that § 504 be interpreted to cover "all action disparately affecting the handicapped." [21] 469 U.S. at 298, 105 S.Ct. at 718. Given the competing interests, the Court concluded that "[a]ny interpretation of § 504 must ... be responsive to two powerful but countervailing considerations—the need to give effect to the statutory objectives and the desire to keep § 504 within manageable bounds." 469 U.S. at 299, 105 S.Ct. at 719. While the *Alexander* Court rejected the notion that § 504 applies to all disparate impact claims, it clearly acknowledged that, in order for § 504 to have any meaning (since most discrimination against the handicapped is not the product of "invidious animus, but rather of thoughtlessness and indifference"), it must

---

**21.** The Court stated that "[t]he formalization and policing of this process could lead to a wholly unwieldy administrative and adjudicative burden." 469 U.S. at 298, 105 S.Ct. at 719.

apply to some forms of disparate impact. *See Id.*

The facts in this case suggest that there was a disparate impact involved, e.g., the school officials' failure to take meaningful action when presented with architectural deficiencies that act as barriers to the handicapped. As the *Alexander* Court noted, "elimination of architectural barriers was one of the central aims of the [Rehabilitation] Act (citation omitted), yet such barriers were clearly not erected with the aim or intent of excluding the handicapped." 469 U.S. at 297, 105 S.Ct. at 718. The facts indicate that this is not a case of merely "benign neglect." Rather, the disparate impact involved here appears to be something approaching the intentional conduct standard. If § 504 is to have any meaning, it must apply to the disparate impact— something more than benign but less than intentional conduct—suggested by the facts of this case. If § 504 does not apply to this case, then § 504 would be of little help for the handicapped. Accordingly, this Court will deny defendants' summary judgment motion as to the intentional conduct claim.

### 2. *Due Process Claim*

In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court held that mere negligence, even if it results in the loss of life, liberty, or property, "does not implicate the Due Process Clause." 474 U.S. at 334, 106 S.Ct. at 666. *Daniels* explicitly overruled *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) "to the extent that [*Parratt*] state[d] that mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment." 474 U.S. at 330–31, 106 S.Ct. at 664. The Court redefined the meaning of "deprive" on the ground that to allow mere negligence would transform the fourteenth amendment into " 'a font of tort law to be superimposed upon whatever systems may already be administered by the States.' " 474 U.S. at 332, 106 S.Ct. at 665 (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)).

The *Daniels* Court left open the question concerning "what 'more' than negligence— intent, recklessness or 'gross negligence'— is required" for a deprivation.[22] 474 U.S. at 334, 106 S.Ct. at 666. Plaintiff clearly was entitled to some form of notice of her procedural rights as well as meaningful access to that process before defendants could simply refuse to honor her repeated requests to enroll at MFHS. The Court believes there is a material issue of fact as to whether defendants' actions constitute mere negligence[23] and, therefore, will deny summary judgment.

### CONCLUSION

Based on the foregoing, IT IS ORDERED THAT

(1) Plaintiff's Pre–Trial Motion (Doc. # 265) is granted in part and denied in part.

(2) Defendants' Motions for Summary Judgment (Docs. # 266, 268, 269, 277 and 287) are denied.

---

**22.** In a footnote, the Court stated that the *Daniels* case "affords us no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." 474 U.S. at 334 n. 3, 106 S.Ct. at 666 n. 3.

**23.** Although it is clear that mere negligence is not enough to state a claim under the due process clause, the Court is uncertain as to what standard, short of intent, to apply in this case. Arguably, a showing of recklessness is sufficient to show a deprivation. *See* 100 *Harv.L.Rev.* 148 (1986).