**I.D., by his parents and by next friend E.D.; and by next friend W.D.; W.D.; E.D.**

**v.**

**WESTMORELAND SCHOOL DISTRICT.**

Civ. No. 91–155–S.

United States District Court, D. New Hampshire.

Jan. 9, 1992.

Order March 16, 1992.

Gregory R. Van Buiten, Burlington, Vt., for plaintiffs.

Gerald M. Zelin, Salem, N.H., for defendant.

ORDER

STAHL, District Judge.

In this civil action, plaintiffs I.D., E.D., and W.D. challenge the individual education plan ("IEP") developed for I.D. by defendant Westmoreland School District. Plaintiffs claim that the IEP: (1) was not promulgated in compliance with procedures established in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (Count I); and (2) violates protections guaranteed by the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and its implementing regulations (Count II). Currently before the Court are plaintiffs' motion for reconsideration of this Court's August 1, 1991 Order, 788 F.Supp. 632, dismissing Count I of the complaint as untimely, and defendant's motion to dismiss Count II of the complaint. The Court considers each motion in turn.

*1. Plaintiffs' Motion for Reconsideration*

In their motion for reconsideration, plaintiffs advance three alternative arguments to support their contention that the Court's

previous dismissal of Count I of the complaint was improper: (1) plaintiffs' cause of action accrued when they received notification of the hearing officer's March 11, 1991 decision; (2) the thirty-day statute of limitations applicable to actions brought under 20 U.S.C. § 1415(e)(2), *see Bow School Dist. v. Quentin W.*, 750 F.Supp. 546, 550 (D.N.H.1990), should be equitably tolled in these circumstances; and (3) the Court should not retroactively apply the rule that the thirty-day statute of limitations begins to run on the date the hearing officer issues a decision. Having carefully considered each of the above arguments, however, the Court is not persuaded to alter its 8/1/91 Order.

Plaintiffs' first contention is that the thirty-day statute of limitations should begin to run on March 11, 1991, the date they received notice of the hearing officer's unfavorable decision. Defendant responds that a receipt rule is a problematic method of determining when a period of limitations begins to accrue, and is inconsistent with the holding in *Quentin W.*, 750 F.Supp. at 548, 551.

■ The question of when an action accrues under a federal statute is to be determined by federal law. *See e.g., Street v. Vose*, 936 F.2d 38, 40 (1st Cir.1991). To determine when the thirty-day limitations period for 20 U.S.C. § 1415(e)(2) actions begins to accrue, the Court must consider the "general purposes of the [IDEA] and of its other provisions, and ... [the] practical ends which are to be served by any limitation of the time within which an action must be brought." *See Crown Coat Front Co. v. United States*, 386 U.S. 503, 517, 87 S.Ct. 1177, 1185, 18 L.Ed.2d 256 (1967) (construing 28 U.S.C. § 2401(a)) (quoting *Reading Co. v. Koons*, 271 U.S. 58, 62, 46 S.Ct. 405, 406, 70 L.Ed. 835 (1926)); *see also Albert v. Maine Cent. R.R. Co.*, 905 F.2d 541, 543 (1st Cir.1990) (construing section 56 of the Federal Employers' Liability Act).

■ One of the general purposes of the IDEA is to "ensure prompt resolution of disputes regarding appropriate education for handicapped children." *See Spiegler v. Dist. of Columbia*, 866 F.2d 461, 467 (D.C.Cir.1989); *see also Quentin W.*, 750 F.Supp. at 550 ("speedy resolutions to the IEP and placement disputes that characterize § 1415(e)(2) actions are necessary for such resolutions to serve any substantively useful purpose."). A receipt rule undoubtedly would encourage time-consuming litigation over the question of exactly when the parties received the hearing officer's decision in the mail, thereby delaying resolution of already protracted IDEA cases. Without a Congressional mandate requiring courts to use a receipt rule, therefore, this Court is not willing to institute such a burdensome procedure.[1]

---

1. The Court is mindful of the litigation which the congressionally mandated thirty-day receipt rule in 42 U.S.C. § 2000e–16(c) continues to create in the context of employment discrimination cases. *See, e.g., Irwin v. Veterans Admin.*, —— U.S. ——, ——, 111 S.Ct. 453, 456, 112 L.Ed.2d 435 (1990) (resolving dispute over whether lawyer's receipt of EEOC letter begins running of limitations period for client); *Sousa v. Nat. Labor Relations Bd.*, 817 F.2d 10, 10–11 (2d Cir.1987) (resolving dispute over exactly when plaintiff received EEOC letter where EEOC sent the letter by certified mail, but letter remained in plaintiff's mailbox for 5 days before he picked up his mail); *Hornsby v. United States Postal Service*, 787 F.2d 87, 91 (3d Cir.1986) (resolving same dispute where post office placed a form notifying plaintiff that "a letter addressed to him could be picked up at the Post Office").

The Congressionally mandated ninety-day receipt rule in 42 U.S.C. § 2000e–5(f)(1) has created similar litigation. *See e.g., Espinoza v. Mis-souri Pacific R.R. Co.*, 754 F.2d 1247, 1248–49 (5th Cir.1985) (resolving dispute over exactly when plaintiff received EEOC letter where EEOC mailed it to the address that plaintiff gave them, but plaintiff was out of town at the time); *St. Louis v. Alverno College*, 744 F.2d 1314, 1315–17 (7th Cir.1984) (resolving same dispute where EEOC mailed letter to the most recent address plaintiff had given them, but plaintiff had moved without notifying the EEOC); *Law v. Hercules, Inc.*, 713 F.2d 691, 692–93 (11th Cir.1983) (resolving same dispute where EEOC sent the letter by certified mail, but plaintiff's son signed for the letter); *Bell v. Eagle Motor Lines, Inc.*, 693 F.2d 1086, 1086–87 (11th Cir. 1982) (resolving same dispute where plaintiff's wife received the EEOC letter); *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1242–43 (11th Cir.1982) (resolving same dispute where EEOC mailed the letter to plaintiff's temporary address despite plaintiff having notified the EEOC of his current address).

Moreover, the Court is not persuaded by plaintiffs' argument that the Court's 8/1/91 Order is contrary to well-established precedent. To support their argument, plaintiffs cite case law holding that a federal cause of action accrues for limitations purposes when a plaintiff becomes aware of his/her injury. In each of the cases cited by plaintiffs, however, the court analyzed the accrual question in terms of the plaintiff's alleged underlying constitutional or statutory injury, rather than any right the plaintiff may have had to challenge an adjudication on the merits of his/her claim. *See, e.g., Delaware State College v. Ricks,* 449 U.S. 250, 255–56, 258, 101 S.Ct. 498, 502–03, 66 L.Ed.2d 431 (1980) (holding that limitations period under Title VII and 42 U.S.C. § 1981 began to run when defendant communicated its unfavorable tenure decision to plaintiff); *Pauk v. Bd. of Trustees of City Univ.,* 654 F.2d 856, 861 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982) (holding that limitations period under § 1983 began to run when plaintiff received final notification from the University that he was being discharged); *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981) (holding that limitations period under § 1983 began to run when plaintiff "knew of his injury arising from the alleged assault and false arrest"); *Bireline v. Seagondollar,* 567 F.2d 260, 263 (4th Cir.1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1977) (holding that limitations period under § 1983 began to run when plaintiff was given "final notice of termination of employment" by University official).

In the instant case, plaintiffs are not asking the Court to determine when the limitations period began to run on their alleged underlying injury, i.e., their alleged failure to receive a free appropriate public education. Instead, plaintiffs are asking this Court to decide when the limitations period began to run for the purposes of challenging the hearing officer's March 11, 1991 determination of whether they were, in fact, injured.

■ While plaintiffs are entitled to contest the hearing officer's decision under 20 U.S.C. § 1415(e)(2),[2] nothing in that section of the statute confers upon plaintiffs a new cause of action. Rather, § 1415(e)(2), merely gives plaintiffs the right to challenge the unfavorable decision. *Cf. Bireline,* 567 F.2d at 263 ("The fact that [plaintiff] was unsuccessful in the administrative reconsideration did not create a new cause of action; it only made it apparent that if she were to obtain relief[,] it could only come as a result of a successful lawsuit commenced within [the limitations period].").

The right to bring an action under § 1415(e)(2) is analogous to the right a litigant in federal court has to appeal an unfavorable order of a district court.[3] Under Rule 4(a)(1) of the Federal Rules of Appellate Procedure, a litigant who is aggrieved by a district court order must file notice of his/her appeal "within 30 days after the *date of entry* of the judgment or order appealed from ... [.]" *Lopez v. Corporacion Azucarera de Puerto Rico,* 938 F.2d 1510, 1513 n. 5 (1st Cir.1991) (quoting Rule 4(a)(1), Fed.R.App.P.) (emphasis in original).

Further, the accrual rule in the statute of limitations borrowed by the Court in *Quentin W.* provides that the thirty-day limitations period for appeals of administrative hearings in New Hampshire begins to run on the date the administrative agency enters a decision. *See* RSA 541:6.[4] While

**2.** 20 U.S.C. § 1415(e)(2) provides in pertinent part:

Any party aggrieved by the findings and decision made ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

**3.** The similarity of § 1415(e)(2) actions to appeals has previously been explicated by this Court. *See Quentin W.,* 750 F.Supp. at 549.

**4.** RSA 541:6 provides:

Within thirty days after the application for a rehearing is denied, or, if the application is

neither Rule 4(a)(1) nor RSA 541:6 are controlling in this action, they bolster the Court's conclusion that the thirty-day limitations period began to run on March 11, 1991. The Court is not persuaded, therefore, to apply a receipt rule to reinstate Count I of plaintiffs' complaint.[5]

Plaintiffs also assert a retroactivity argument in their motion for reconsideration. Essentially, plaintiffs contend that the general rule favoring retroactivity, *see James B. Beam Distilling Co. v. Georgia,* — U.S. —, —, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481 (1991), should not be applied here because they were not on notice that the thirty-day limitations period began to run on the date that the hearing officer issued his decision. According to plaintiffs, applying the accrual rule as outlined in the Court's 8/1/91 Order would produce "substantial inequitable results." The Court disagrees.

"[W]hen the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *Beam,* — U.S. at —, 111 S.Ct. at 2448. Moreover, where the rule of law in question "antedate[s] the events on which the dispute turns, the court merely applies [a rule] already decided, and the litigant has no basis on which to claim exemption from [that rule]." *See id.* at —, 111 S.Ct. at 2443.

In *Quentin W.,* the Court held that the most analogous state statute of limitations for actions brought under 20 U.S.C. § 1415(e)(2) was the thirty-day limitations period in RSA 541:6. *See Quentin W.,* 750

F.Supp. at 550. To determine the point at which the thirty-day period began to run, the Court in *Quentin W.* clearly relied upon the date "the hearing officer issued her decision ... [.]" *See id.* at 548; *see also id.* at 551 ("In the instant matter, plaintiff school district waited ninety-four days [after the hearing officer issued her decision] to bring the action."). Thus, the Court in *Quentin W.* applied the accrual rule to the parties before it in that case.

 As the November 9, 1990 decision in *Quentin W.* predated the March 11, 1991 hearing officer's decision in this case, plaintiffs have "no basis on which to claim exemption from" its holding. *See Beam,* — U.S. —, 111 S.Ct. at 2443.[6] Accordingly, plaintiffs retroactivity argument is without merit.[7]

### 2. Defendant's Motion to Dismiss Count II of the Complaint

 In Count II of their complaint, plaintiffs allege that I.D.'s 1990–91 IEP violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* and its implementing regulations. Defendant has moved for a judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P.

"Under Rule 12(c) the district court 'must accept all of the non-movant's well-pleaded factual averments as true and draw all reasonable inferences in [his/her] favor ... [.]' " *Santiago de Castro v. Morales Medina,* 943 F.2d 129, 130 (1st Cir. 1991) (quoting *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988)). "[E]ven then[,] judgment may not be entered on the pleadings 'unless it appears beyond doubt

granted, then within thirty days after the decision on such rehearing, the applicant may appeal by petition to the supreme court.

**5.** In their motion for reconsideration, plaintiffs also assert that the thirty-day limitations period should be equitably tolled in this case. Because the Court finds that its 8/1/91 Order adequately addressed and disposed of this issue, it need not rehash its analysis here.

**6.** Even if the relevant facts of this case had not predated the *Quentin W.* decision, the Court would be compelled to apply the accrual rule retroactively. Having applied the accrual rule retroactively to the parties before it in *Quentin W.,* the Court must thereafter apply the rule

retroactively to all other parties that come before it. *See Beam,* — U.S. at —, 111 S.Ct. at 2448.

**7.** The Court also finds that this issue does not involve "a controlling question of law as to which there is substantial ground for difference of opinion ... [.]" *See* 28 U.S.C. § 1292(b). Further, an immediate appeal from this Order would not "materially advance the ultimate termination of the litigation ... [.]" *See id.* Accordingly, the Court denies plaintiffs' motion under 28 U.S.C. § 1292(b) for leave to file an interlocutory appeal of this Order.

that the plaintiff can prove no set of facts in support of [his/hers] claim which would entitle [him/her] to relief ... [.]'" *Id.* (quoting *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977)).

*Inter alia,* the complaint alleges that defendant failed to provide plaintiff I.D. with educational services "equal to" and as "effective as" those provided his non-handicapped peers. *See* Complaint at ¶¶ 46, 47. The complaint also asserts that "defendant failed to provide accommodations necessary to enable I.D. to benefit as fully from the educational services provided by the defendant as from those educational services provided to his non-handicapped peers." *See* Complaint at ¶ 48. Specifically, plaintiffs contend that defendant failed to provide I.D. with appropriate instruction in his tenth grade science, math, social studies, and language arts courses. Plaintiffs claim that these acts or omissions constitute discrimination in violation of § 504 of the Rehabilitation Act and its implementing regulations.

To state a claim under § 504, "a plaintiff must prove: (1) he is a 'handicapped person' under the Rehabilitation Act; (2) he is 'otherwise qualified' for the program; (3) he is excluded from benefits solely because of his handicap; and (4) the program or special service receives federal funding." *Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2d Cir.1990); *see also* 29 U.S.C. § 794(a).[8]

The Rehabilitation Act defines a "handicapped person" as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). According to the Act's implementing regulations,[9] "learning" is considered a "major life activit[y]," *see* 45 C.F.R. § 84.3(j)(2)(ii) (1990), and the definition of "physical or mental impairment" includes "specific learning disabilities." *See* 45 C.F.R. § 84.3(i)(B) (1990).

Under the Act, "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *See Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). In the context of public high school, this means that the student claiming he/she was denied educational services must show that he/she was denied these services when he/she was "of an age during which nonhandicapped persons [were] provided such services ... [.]" *See* 45 C.F.R. § 84.3(k)(2) (1990).

Applying this law to the instant case, the Court is not persuaded that "it appears *beyond doubt* that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *See Santiago de Castro*, 943 F.2d at 130 (emphasis added). First, plaintiffs allege that I.D. has a learning disability which impairs a major life activity. *See* Complaint at ¶ 44. Because learning is a "major life activity" and a learning disability is considered a "physical or mental impairment" under § 504, the Court finds that I.D. qualifies as a "handicapped person" under the Act. *See Puffer v. Reynolds*, 761 F.Supp. 838, 851–52 (D.Mass.1988) (holding that a student with a learning disability is a "handicapped person" under the Rehabilitation Act); *see also Wynne v. Tufts Univ. School of Medicine*, 932 F.2d 19, 23, n. 3 (1st Cir.1991) (assuming a per-

---

**8.** 29 U.S.C. § 794(a) provides in pertinent part:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

**9.** As the Act's implementing regulations "were drafted with the oversight and approval of Congress, *see Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 634–635, and nn. 14–16, 104 S.Ct. 1248, 1254–55, and nn. 14–16, 79 L.Ed.2d 568 (1984) [,] they provide 'an important source of guidance on the meaning of § 504.'" *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1126, 94 L.Ed.2d 307 (1987) (quoting *Alexander v. Choate*, 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 721 n. 24, 83 L.Ed.2d 661 (1985)).

son with a learning disability is a "handicapped person" under § 504).

Second, there is no dispute that I.D. was of an age which qualified him to participate in defendant's public school program at a time when his non-handicapped peers were allegedly provided appropriate educational services. *See generally* Complaint at ¶¶ 46–49; *see also Sullivan v. Vallejo City Unified School Dist.*, 731 F.Supp. 947, 958 (E.D.Cal.1990) (finding that student satisfied second element of *prima facie* case by showing that she was qualified to participate in the public school system).

To fulfill the third element, plaintiffs must show that I.D. was denied an appropriate education solely because of his learning disability. Plaintiffs allege that I.D. has been denied an appropriate education because defendant has not provided him with an IEP that adequately addresses his learning disability. There appears to be no dispute that I.D.'s special needs are solely a result of his learning disability. As plaintiffs have alleged that defendant's actions prevented I.D. from receiving educational services equal to those of his non-handicapped peers, the Court finds that plaintiffs have satisfied this element of the *prima facie* case.[10] *See John A. v. Gill*, 565 F.Supp. 372, 383 (N.D.Ill.1983) (holding that plaintiffs satisfied this element of *prima facie* case by showing that defendant's actions had an adverse effect on student solely because of student's handicap); *see also David H. v. Spring Branch Indep.*

*School Dist.*, 569 F.Supp. 1324, 1336–37 (S.D.Tex.1983) (holding that plaintiffs stated a *prima facie* case under § 504 by showing that defendant school district denied learning disabled student educational program equal to his non-handicapped peers).

Finally, there is no dispute that defendant school district receives federal funding. Accordingly, the Court finds that plaintiffs' complaint states a claim under § 504 of the Rehabilitation Act. Thus, the Court denies defendant's Rule 12(c) motion.

### 3. Conclusion

For the reasons herein stated, plaintiffs' motion for reconsideration [document no. 11] is denied, and defendant's motion to dismiss Count II [document no. 13] is denied.

SO ORDERED.

### ORDER ON MOTION FOR RECONSIDERATION

In this civil action, plaintiffs I.D., E.D., and W.D. challenge the individual education plan ("IEP") developed for I.D. by defendant Westmoreland School District. Currently before the Court is defendant's motion for reconsideration of this Court's January 9, 1992, Order denying defendant's motion to dismiss plaintiffs' claim under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and its implementing regulations.[1]

---

**10.** Defendant argues that, in order to survive this 12(c) motion, plaintiffs must allege that defendant's actions were a result of discriminatory animus. *See Colin K. v. Schmidt*, 715 F.2d 1, 10 (1st Cir.1983) (noting in a § 504 action that plaintiffs failed to provide "any evidence that [defendants] have any particular animus towards learning disabled children"). However, the Supreme Court has held that proof of discriminatory animus is *not always* required to make out a *prima facie* case under § 504. *See Choate*, 469 U.S. at 292–299, 105 S.Ct. at 715–19; *see also Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1384 (3rd Cir.1991) (citing *Choate* for the proposition that a plaintiff does not have to prove intentional discrimination in a § 504 action); *Carter v. Casa Central*, 849 F.2d 1048, 1053 (7th Cir.1988) (citing *Choate* for the proposition that lack of discriminatory intent is not a defense to a § 504 action); *Begay v. Hodel*,

730 F.Supp. 1001, 1014–15 (D.Ariz.1990) (citing *Choate* and stating that "[d]efendants are incorrect in arguing that proof of discriminatory intent is necessary to state a claim under § 504"). *But see P.C. v. McLaughlin*, 913 F.2d 1033, 1041–42 (2d Cir.1990) (assuming that proof of discriminatory animus is still required after *Choate*).

The Court can locate no case law addressing the specific question of whether proof of intentional discrimination is required where a plaintiff is challenging the legality of his/her IEP. Therefore, in light of *Choate*, and because the parties have not yet fully addressed this issue, the Court declines to grant the relief requested in defendant's motion to dismiss.

**1.** In its January 9, 1992, Order, this Court also reaffirmed its August 1, 1991, Order dismissing plaintiffs' claim under the Individuals With Dis-

In its motion for reconsideration, defendant argues that the hearing officer's March 11, 1991, decision—that I.D.'s 1990–91 IEP satisfied the requirements of the IDEA—precludes this Court's consideration of plaintiffs' similar claim under the Rehabilitation Act. Essentially, therefore, defendant is asking this Court to give preclusive effect to the hearing officer's decision.[2]

In a recent case, however, the Eleventh Circuit held that hearing officer's decisions in IDEA cases should not be given preclusive effect in federal courts. *See JSK v. Hendry County School Bd.*, 941 F.2d 1563, 1567–70 (11th Cir.1991). The Court finds the reasoning in that case persuasive. Accordingly, defendant's motion for reconsideration [document no.] is denied.[3]

SO ORDERED.

abilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, as untimely.

2. The Court notes that defendant has not characterized its position as an argument for preclusion. Instead, defendant baldly asserts that the hearing officer's decision under the IDEA bars this Court's consideration of plaintiffs' Rehabilitation Act claim. The case law cited by defendant arguably supports a ruling that the requirements under the IDEA are broader than those

under the Rehabilitation Act. However, defendant has not cited any case law which even remotely supports its unstated assumption that a hearing officer's decision in an IDEA case is entitled to preclusive effect.

3. Because the Court denies defendant's motion for reconsideration, it need not address defendant's motion for extension of time [document no. 24].