**BOROUGH OF PALMYRA, BOARD OF EDUCATION, Plaintiff/Counter–Defendant,**

**v.**

**F.C., A Minor Through his Parents, R.C. and M.C., Defendant/Counterclaimant/Third–Party Plaintiff,**

**v.**

**Dennis HURLEY, Ronald Cancelliere, Dave Bell, Matthew Buscillo, Rosemarie Blumenstein, Dori Levy, Gary Horton, Howard Cohen, and Thomas Delmoore, Third–Party Defendants.**

No. CIV. A. 97–6119 (JBS).

United States District Court,
D. New Jersey.

April 22, 1998.

Frank P. Cavallo, Jr., Parker, McCay & Criscuolo, P.A., Marlton, NJ, for Plaintiff.

Rebecca K. Spar, Jennifer L. Scully, Cole, Schotz, Meisel, Forman & Leonard, Hackensack, NJ, for Defendant.

Susan S. Hodges, Capehart & Scatchard, P.A., Mt. Laurel, NJ, for Third–Party Defendants.

## *OPINION*

SIMANDLE, District Judge.

Plaintiff Borough of Palmyra Board of Education ("Board") brought this action ap-

pealing the November 13, 1997, decision of Administrative Law Judge Joseph Fidler ("ALJ") of the New Jersey Office of Administrative Law. In that decision, the ALJ determined that under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the implementing regulations at 34 C.F.R. § 104.33, the Board is responsible for the tuition and transportation costs of defendant F.C.'s attendance at a private school. Defendant F.C., a minor through his parents R.C. and M.C. (collectively, "the Cs"), counterclaimed seeking temporary and permanent injunctive relief compelling the Board to comply with the ALJ's decision. Presently before the court is F.C.'s motion, upon order to show cause, seeking a preliminary injunction to compel the Board to comply with the ALJ's decision by paying for F.C.'s tuition in the private program pending final review of the ALJ's decision and the Board's cross-motion for a stay of that decision.

These cross-motions were heard on April 17, 1998. This case requires the court to determine whether the local school board should be required to bear the costs of tuition and transportation to a private school program rendering special educational services under Section 504 of the Rehabilitation Act of 1973 while the Board appeals the order of a State Administrative Law Judge, which required it to bear these expenses. This court's findings follow pursuant to Federal Rules of Civil Procedure 52(a) and 65(d).

## I. *Background*

F.C. is a 15–year–old student who resides within the Palmyra Board of Education District. He has been diagnosed with a severe case of Attention Deficit Hyperactivity Disorder ("ADHD"). The counterclaim alleges that F.C.'s disorder causes him to be easily distracted, disorganized, and impulsive and has negatively affected his performance in school. (Counterclaim ¶ 8.) The Cs suspected that F.C. suffered from ADHD as early as November 1992 and informed the Board of

their suspicions at that time. (Counterclaim ¶ 9.) In April 1993, the Board confirmed that F.C. did suffer from ADHD, but informed the Cs that F.C. was not eligible for special educational services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, *et seq.*[1] (*Id.* at ¶ 9.) The Board allegedly did not inform the Cs that F.C. might be eligible for special services under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, until June 1994. (*Id.* at ¶ 11.)

In April 1995, the Board produced a written Section 504 plan for F.C. The Cs allege that the plan failed to address F.C.'s unique academic and affective disorders and was never fully implemented by the Board. (*Id.* at ¶¶ 14, 18.) Dissatisfied with the Board's efforts to accommodate F.C.'s disability, the Cs sought an administrative hearing before the New Jersey Department of Education in October 1996 and placed him at the Hill Top Preparatory School, a private school for educationally handicapped students, in February 1997. (*Id.* at ¶ 20.) The matter was transferred to the New Jersey Office of Administrative Law, which is responsible for conducting hearings for contested issues under Section 504. *See* N.J.A.C. 6:28–2.7. The case was assigned to Administrative Law Judge Joseph F. Fidler ("ALJ") on December 24, 1996. (Counterclaim, Ex. A at 2.)

The ALJ conducted a hearing over seven days during the Spring and Fall of 1997, hearing testimony of 16 witnesses for the Cs and one witness for the Board. The Cs asserted that the Board had failed to develop and implement a Section 504 accommodation plan that effectively addressed F.C.'s disability, necessitating F.C.'s placement at the Hill Top School. (Counterclaim ¶ 21.) The ALJ issued a 43–page opinion on November 13, 1997, concluding that the Board had indeed failed to provide F.C. with a free appropriate education as required by Section 504 and 34 C.F.R. § 104.33. (Counterclaim, Ex. A at 37.) The ALJ further found that because the Board's Section 504 plan for F.C. was "seriously deficient," the Cs were entitled under 34 C.F.R. § 104.33 to enroll F.C. in the Hill

---

**1.** According to the ALJ's opinion, another administrative hearing was held on the issue of whether F.C. was eligible for special education services under the IDEA. (Counterclaim, Ex. A at 4.) Administrative Law Judge John Futey determined that F.C. was not eligible under the IDEA, a decision which was also appealed to federal court. (*Id.*)

Top School. (*Id.* at 39.) Pursuant to his findings, the ALJ ordered the Board to reimburse the Cs for the costs of F.C.'s private placement from the time of his enrollment until the Board offers F.C. a free appropriate education, consistent with the requirements of Section 504 and 34 C.F.R. § 104.33. (*Id.* at 39–40.) The Board has yet to comply with the ALJ's decision.[2]

On December 16, 1997, the Board commenced this action, appealing the decision of the ALJ.[3] On appeal, the Board asserts that the ALJ improperly held that under Section 504 the Board had the burden of proving that it had offered F.C. a free and appropriate education.[4] (Compl. ¶ 15.) The Board also challenges the ALJ's ultimate determination that the Board failed to offer F.C. a free and appropriate education under Section 504 and 34 C.F.R. § 104.33. (Compl. ¶¶ 21,22.)

The Cs filed a counterclaim and third-party complaint on February 25, 1998.[5] They allege that by failing to inform them of their rights under Section 504 and then by refusing to comply with the ALJ's order, the Board and the third-party defendants have violated and are continuing to violate F.C.'s rights under Section 504 and are guilty of contempt.[6] (Counterclaim ¶¶ 27, 38.) They bring claims under 42 U.S.C. § 1983 and directly under Section 504, over which this court has subject-matter jurisdiction.[7]

---

2. The Board claims in its brief that it submitted a revised Section 504 plan to the Cs, implementing the ALJ's decision, and that the Cs rejected it. (Pl. Br. at 3.) The Cs admit that they rejected the revised plan as inconsistent with the ALJ's decision. (M.C. and R.C. Cert., Ex. B.) Because the Board provides no description of the revised plan, the court is left to speculate as to its contents and must assume that it was not in compliance with the ALJ's decision. At oral argument, the Board confirmed it has not presented its proposed Section 504 plan to the Office of Special Education Programs of the Department of Education to redress the infirmities found by the ALJ in the Board's previous Section 504 plan.

3. In the Complaint, the Board alleges that this court has jurisdiction to hear an appeal of the State ALJ's decision pursuant to 20 U.S.C. § 1415(e)(2). Section 1415(e)(2), however, applies to appeals of administrative decisions under the IDEA. Though the IDEA and Section 504 are similar in their substantive requirements, *see* W.B. v. Matula, 67 F.3d 484, 492–93 (3d Cir. 1995), the Board has not shown why the procedural requirements of the two statutes should be employed interchangeably. Whether this court has jurisdiction to hear an appeal of the State ALJ's decision under 20 U.S.C. § 1415(e)(2) is therefore questionable, and the Board has not articulated an alternative basis for the court's jurisdiction. The Board does assert that it is seeking to redress violations of its rights secured by Section 504, and at oral argument counsel for F.C. did not dispute that the Board has Section 504 standing. This court finds it has subject matter jurisdiction over this dispute. *See infra* n. 7.

The ALJ is probably responsible for this confusion because his order provides that his decision is appealable in a District Court of the United States pursuant to 20 U.S.C. § 1415(e)(2) and 34 C.F.R. § 300.511. (Counterclaim, Ex. A at 40.)

4. The Board first raised this issue in an interlocutory appeal of the ALJ's decision in a related complaint before this court, *Borough of Palmyra* Bd. of Ed. v. F.C., A Minor through his Parents, R.C. and M.C., Civil Action No. 97–1870(JBS). The court denied that appeal on the ground that it was premature where the ALJ had not rendered a final determination.

5. The Third–Party Complaint alleges claims against various school officials responsible for decisions related to F.C.'s education in the Palmyra School District. Count 1 of the third-party complaint seeks to enforce the ALJ's decision against various school officials; because such individual enforcement is rendered moot by the disposition of defendant F.C.'s motion for preliminary injunctive relief against the Board, *see infra*, the relief sought by third-party plaintiff F.C. in Count 1 of the third-party complaint is moot and will be dismissed. By agreement of counsel, the remaining counts of the third-party complaint will be stayed pending disposition of the Section 504 dispute between the plaintiff Board and the defendant/counterclaimant F.C., and a separate stay order will be entered.

6. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides in pertinent part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a).

7. The Cs may properly assert a claim directly under Section 504, as well as a § 1983 claim predicated on Section 504. *W.B. v. Matula*, 67 F.3d 484, 494 (3d Cir.1995). Because the court has jurisdiction over the counterclaim arising under Section 504, it is possible to treat the Board's Complaint as the negation of that counterclaim, and to adjudicate the claims of both

Among other monetary relief, the Cs seek an order compelling the Board to comply with the ALJ's decision.

## II. *Discussion*

■ Presently before the court is the Cs' motion for a preliminary injunction compelling the Board to comply with the ALJ's decision and the Board's cross-motion for a stay of the decision pending the outcome of the Board's appeal. The standard for determining whether to stay an administrative decision is essentially the same as that applied to an application for preliminary injunctive relief, and the court will address them together. When considering whether to stay an administrative decision or to issue a preliminary injunction, the court must balance four factors: (1) the likelihood that the moving party will prevail on the merits of its claim (appeal); (2) the likelihood that it will suffer irreparable harm if the preliminary injunction (stay) is not granted; (3) the prospect that granting the injunction (stay) will result in substantial harm to other interested persons; and (4) the public interest in granting the injunction (stay). *American Tel. & Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994), *cert. denied*, 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995); *Kershner v. Mazur-kiewicz*, 670 F.2d 440, 443 (3d Cir.1982) (en banc).

### 1. *Likelihood of Success*

■ The Board argues that it is likely to succeed on the merits of its appeal because the ALJ improperly ordered it to pay for the costs of sending F.C. to a private school until the Board proposed a plan that complied with the requirements of Section 504 and its implementing regulations.[8] The Board contends that "no District Court has ever required that a school district pay for a private placement under Section 504." (Pl. Br. at 8–9.) The Board has apparently overlooked the recent decision from the Eastern District of Pennsylvania, *Christen G. v. Lower Merion School Dist.*, 919 F.Supp. 793 (E.D.Pa. 1996), which involved an action under the IDEA and Section 504. *Id.* at 797. The plaintiffs, a mother and child, claimed that the defendant school district had failed to offer a free appropriate education to the child, who suffered from ADHD. *Id.* The plaintiffs placed the child in a private school during the period when the defendant failed to provide her with a free appropriate education and sought to recover the costs of the private placement. *Id.* The court held that reimbursement for the costs of private school

parties, whether or not the Board has standing under Section 504 to appeal an unfavorable ALJ determination.

8. In support of its position that reimbursement for a private placement is never an available remedy under Section 504, the Board relies on a Supreme Court decision, *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). *Davis* addressed the narrow issue of whether Section 504 prohibited a nursing school from imposing physical qualifications for admission to its clinical training programs. *Id.* at 400, 99 S.Ct. 2361. The nursing school had denied admission to an applicant on account of her hearing disability. The court held that Section 504's language "otherwise qualified handicapped individuals" referred only to those who could meet the professional school's requirements, including physical ones, in spite of a handicap. *Id.* at 406–07. The Court further held that the nursing school's failure to modify its curriculum or lower its standards to accommodate the student's disability did not constitute discrimination under Section 504. *Id.* at 413. The Board argues that this latter holding precludes a court from ordering private placement or tuition reimbursement to accommodate a dis-

abled student in the primary/secondary school context under Section 504. Indeed, some district courts have interpreted *Davis* in this manner. *Turillo v. Tyson*, 535 F.Supp. 577, 587–88 (D.R.I.1982). The Supreme Court, however, clearly limited its decision to the facts before it and left open the possibility that in certain circumstances the failure to modify existing programs might constitute a violation of Section 504. *Davis*, 442 U.S. at 412–13, 99 S.Ct. 2361; *see also Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1384–85 (3d Cir.1991) (medical school must provide reasonable accommodation to student's handicap; *Davis* only precluded "substantial alterations" to existing programs); *S–1 v. Turlington*, 635 F.2d 342, 349–50 (5th Cir.1981) (noting that *Davis* dealt solely with whether Section 504 forbids professional schools from imposing physical qualifications for admission to clinical training programs, and that the case did not apply where physical qualifications and professional schools were not involved). This court concludes therefore that *Davis* is not determinative of this case.

education was appropriate relief under both the IDEA and Section 504. *Id.* at 816, 821.

The *Christen G.* court's holding is consistent with the regulations implementing Section 504. The regulations mandate that schools to which Section 504 applies must provide a free appropriate education to qualified handicapped students. 34 C.F.R. § 104.33. Such free education "may consist either of the provision of free services or, if a recipient places a handicapped person in or refers such person to a program not operated by the recipient as its means of carrying out the requirements of this subpart, of payment for the costs of the program." 34 C.F.R. § 104.33(c)(1). The regulations further provide for the payment of transportation costs to and from the private program. 34 C.F.R. § 104.33(c)(2).

The Supreme Court has endorsed the Section 504 implementing regulations. In *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), the Court noted:

> This Court generally has deferred to contemporaneous regulations issued by the agency responsible for implementing a congressional enactment. [Section 504's] regulations particularly merit deference in the present case: the responsible congressional committees participated in their formulation, and both these committees and Congress itself endorsed the regulations in their final form.

*Id.* at 634, 104 S.Ct. 1248 (citations and footnote omitted). Of course, a court's deference to agency regulations is " 'constrained by [its] obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.' " *Davis*, 442 U.S. at 411, 99 S.Ct. 2361 (quoting *Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979)). In *W.B. v. Matula*, 67 F.3d 484 (3d Cir.1995), the Third Circuit recognized the validity of the Section 504 implementing regulation that requires schools to " 'provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction.' " *Id.* at 492–93 (quoting 34 C.F.R. § 104.33(a)); *see also Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1383, 1385 (3d Cir.1991) (acknowledging validity of Section 504 implementing regulation requiring medi-

cal school to "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant").

At this stage of the proceedings, to adjudicate the Cs' motion for preliminary injunctive relief, the court must determine whether it is probable that the Cs will ultimately succeed in demonstrating that the Board has failed to provide a free appropriate education as required by Section 504, and whether a Section 504 remedy includes reimbursement to parents for private placement.

We start with the self-evident proposition that the Board was legally required to implement the ALJ's decision of November 13, 1997, until such time as it has been stayed or overturned on appeal. In this case, although the Board filed its complaint on December 16, 1997, it sought no stay until March 27, 1998, when the Board filed its cross-motion, which was a whole month after this court had entered its Order to Show Cause (filed February 26, 1998) upon the Cs motion for injunctive relief. Although the Board may disagree with the ALJ's decision, it is not free to ignore it.

Under the controlling regulation, 34 C.F.R. § 104.33(c)(1), *supra*, it is plausible to interpret the Board's obligations as two alternatives: the Board must provide "free services" or the Board must place the handicapped student in "a program not operated by the [Board] as its means of carrying out the requirements of this subpart, [and make] payment for the costs of the program." It follows that if the Board fails to provide a free appropriate public education ("FAPE") to a qualified student under Section 504, it must provide for an appropriate placement at Board expense to meet the Board's Section 504 obligation. If it fails to provide both a FAPE and a private placement, then an appropriate remedy must be available to the Section 504 beneficiary. If the placement in the private school is needed to provide the student with a FAPE because the in-school program fails to comply Section 504 and its regulations, the Board must bear the cost of providing a program complying with law. Thus, the court concludes that it is likely that F.C.'s parents will demonstrate that the ALJ

was correct in concluding that, where the Board has improperly refused to provide a FAPE, reimbursement for a private placement is appropriate under Section 504. Because the Board makes no other argument in support of its appeal, the court concludes that it has not established a likelihood of success and it is not entitled to a stay of the ALJ's decision.

The Cs, however, have demonstrated that they will likely succeed on appeal upholding the ALJ's decision.[9] To establish a violation of F.C.'s rights under Section 504, the Cs must prove that (1) F.C. is disabled as defined by the Rehabilitation Act; (2) F.C. is "otherwise qualified" to participate in school activities; (3) the Board receives federal financial assistance; and (4) F.C. was excluded from participation in, denied the benefits of, or subject to discrimination at the school. *W.B. v. Matula,* 67 F.3d 484, 492 (3d Cir. 1995); *Hebert v. Manchester,* 1994 WL 484243, at \*2 (D.N.H. August 30, 1994) (where plaintiff alleged that child was denied access to free, appropriate education, she stated a claim under Section 504); *I.D. v. Westmoreland School Dist.,* 788 F.Supp. 634, 639 (D.N.H.1992). Section 504's implementing regulations require that preschool, elementary, and secondary schools "shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction." 34 C.F.R. § 104.33(a); *see also Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1385 (3d Cir.1991) (failure of medical school to provide reasonable accommodation to student with back injury could constitute a violation of Section 504).

9. The Cs argue that this court is empowered to enforce the ALJ's order and therefore, barring a stay of the order, the Cs have demonstrated the likelihood that they will succeed on the merits of their claims. The cases cited by the Cs do not, however, establish this principle. *See Robinson v. Pinderhughes,* 810 F.2d 1270, 1273–74 (4th Cir.1987); *Petties v. District of Columbia,* 881 F.Supp. 63 (D.D.C.1995). The better course is to require the Cs to establish a likelihood of success on the merits of their claims currently before this court. This somewhat higher standard for preliminary injunctive relief is consonant with the notion than a party seeking affirmative preliminary injunctive relief bears a higher burden that a party seeking to enjoin conduct that would change the relationship of the parties.

The only disputed issues before the ALJ were whether the Board had offered F.C. a free appropriate education and, if not, whether Hill Top was doing so. The ALJ concluded that the Board's Section 504 plan was "seriously deficient." (Counterclaim, Ex. A at 39.) Specifically, the ALJ found that the Board's plan failed to address the impact of ADHD on F.C.'s written and organizational skills. (*Id.* at 38–39.) The ALJ further found that F.C. was receiving an appropriate education at Hill Top, and that the Cs were entitled to reimbursement for the cost of tuition and transportation at Hill Top. (*Id.* at 39.) At the very least, the ALJ has carefully amassed impressive support for these findings.

The court is convinced that the Cs have established a likelihood of success on the merits of their claim. The ALJ's conclusion that the Board's Section 504 plan did not adequately address F.C.'s disability appears to be supported by the administrative record, as is his conclusion that F.C. is receiving an appropriate education at the Hill Top School. And, as noted above, it is likely the Cs can show that the ALJ acted within the scope of Section 504 and its implementing regulations when he ordered the Board to pay for F.C.'s private placement until such time as the Board provides an adequate Section 504 plan.

### 2. *Irreparable Harm to the Board*

The Board contends that if the stay is not granted, it will suffer irreparable harm. Specifically, the Board argues that if it must pay tuition and transportation costs for F.C.'s attendance at the Hill Top Preparatory School,[10] the Board will be forced

10. The Cs have stated that the tuition and transportation costs for the 1996–1997 and 1997–1998 school years amount to $31,980,00. (Def. Br. at 23 n. 4.) The Board has presented a slightly lower total of $31,500.00. (Pl. Br. at 7.) The actual figures are as follows, as extracted from the Certifications of R.C. and M.C. and of Anne Marie Steppler of Hill Top:

1996–97 School Year
| | |
|---|---|
| Parents paid tuition: | $ 9,430.00 |
| Parents paid transportation: | 1,407.00 |
| Total '96—'97 | $10,837.92 |

1997–98 School Year
| | |
|---|---|
| Parents paid tuition: | $ 8,385.00 |
| Parents paid transportation: | 1,347.50 |
| Total paid by parents: | $ 9,732.50 |

either to raise taxes or utilize a budget surplus. The former cannot be accomplished without voter approval and the latter would be fiscally unsound, according to the Board's Business Administrator. (Thompson Aff. ¶¶ 5, 10.) The Cs respond that the financial harm claimed by the Board is overstated and cannot as a matter of law constitute irreparable harm.

To establish irreparable harm, a party must demonstrate that the harm it will suffer is "of a peculiar nature, so that compensation in money cannot atone for it." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994) (quoting *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir.1976)). Economic loss does not constitute irreparable harm. *Id.*

In this case, the Board's only asserted loss is financial. The Board contends that payment of F.C.'s tuition and transportation will deplete its budget surplus to fiscally unsound levels. (Thompson Aff. ¶ 10.) Spending from the surplus would allegedly leave the Board with insufficient funds to meet some unspecified future "crisis." *Id.* The Cs have estimated, however, that the current surplus is approximately $440,000.00. (Def. Reply Br. at 24.) Payment of the unpaid tuition and transportation costs ($12,115.00) would thus amount to less than three percent of the budget surplus. The Board has not adequately explained why a three percent decrease in its budget surplus would cause irreparable harm, or even be "fiscally unsound." The Board has also failed to explain why the payment of F.C.'s tuition and transportation costs does not fall within the "emergency purposes" for which the surplus is designated. (*See* Thompson Aff. ¶ 10.) The Board's calculus of financial harm presents a misleading dichotomy, since the alternative to placement at Hill Top is not a zero expenditure, but rather the commitment of other Board resources to fulfilling the Act's mandate of an appropriate education for F.C.

Finally, the Board has had since November 13, 1997, to begin implementing the ALJ's order and has apparently done nothing to adjust its budget accordingly or to submit an acceptable plan to the Department of Education for an appropriate in-school program, which, if approved, could be implemented within the District. To the extent the Board's own delay has compounded the harm the Board will suffer, the harm is self-inflicted and cannot be considered irreparable. *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995).

### 3. *Irreparable Harm to F.C.*

The Board argues that the Cs will not suffer irreparable harm if the stay is granted. The Cs have stated that they can no longer afford F.C.'s tuition at the Hill Top School and have presented evidence that the failure to pay the tuition is grounds for F.C.'s suspension or dismissal from the school. (*See* M.C. and R.C. Cert. ¶ 7; Steppler Cert. ¶ 4.) If F.C. is forced to return to public school, the Cs argue, he will not receive the free appropriate education to which he is entitled under Section 504. The Board in response questions (certifications to the contrary notwithstanding) whether the Cs really cannot afford to pay the tuition at Hill Top and whether failure to pay the tuition could indeed result in F.C.'s dismissal from the school. Finally, the Board challenges the ALJ's conclusion that Hill Top is providing F.C. with an appropriate education consistent with the requirements of Section 504.

The Board presents no evidence that would undermine the validity of the Cs' contention that they can no longer afford F.C.'s education at Hill Top and that if the tuition is not paid, F.C. will be dismissed from the school. Nor does the Board effectively argue that the education F.C. is receiving at Hill Top is inappropriate. The Board cites testimony presented at the administrative hear-

| | |
|---|---|
| Tuition due (unpaid): | $11,115.00 |
| Unpaid transportation (est.): | 1,000.00 |
| Total Unpaid | $12,115.00 |

Thus, at the present time, the C's have paid tuition and transportation costs of $20,570.42 with respect to F.C.'s attendance at Hill Top

Preparatory School since January 1997, the Board has paid nothing, and the sum of $12,115.00 still remains due and unpaid. The total amount of program costs regarding this private placement for these two academic years, through June 1998, is thus $32,685.42.

ing which indicates that F.C. has had both academic and disciplinary problems at Hill Top, as well as the testimony of Dr. William Chambers, who stated that students with ADD "should be mainstreamed as much as possible." (Pl. Br. at 14; Counterclaim, Ex. A at 26.) Regarding the problems F.C. is encountering at Hill Top, another expert testified at the hearing that often it can take a student 18 months to three years to deal effectively with his disability; at the time of the hearing, F.C. had only been at Hill Top a few months. (Def. Reply Br. at 25; Counterclaim, Ex. A at 29.) Furthermore, Dr. Chambers' testimony is taken out of context, as it is clear from the ALJ's opinion that Dr. Chambers found the Board's plan inadequate. (Counterclaim, Ex. A at 26–27.) Ultimately, the ALJ concluded, after reviewing all the evidence presented at the administrative hearing, that the education F.C. is receiving at Hill Top is appropriate. Though the court need not accept the ALJ's decision, the court must recognize his expertise, *see Christen G.*, 919 F.Supp. at 812, and is loathe to disturb his decision at this preliminary stage without a more thorough discussion of his factual findings by the parties.

The court concludes therefore that upon the present record it appears probable that F.C. is receiving an appropriate education at Hill Top, the loss of which would constitute irreparable harm. *See J.B. v. Killingly Bd. of Ed.*, 990 F.Supp. 57, 72 (D.Conn.1997); *Steldt v. School Bd. of Riverdale School Dist.*, 885 F.Supp. 1192, 1198 (W.D.Wis.1995); *Howard S. v. Friendswood Independent School Dist.*, 454 F.Supp. 634, 641 (S.D.Tex. 1978).[11]

#### 4. Public Interest

■ The Board argues that the issuance of a stay of the ALJ's decision will serve the public interest by preventing the Board from having to raise taxes, cut programs, or deplete its budget surplus. Plaintiff on the other hand contends that there is a strong public interest in enforcing compliance with administrative orders, *Taylor v. District of Columbia*, 19 IDELR 336 (D.D.C.1992), and seeing that disabled students receive a free appropriate education, *Brown v. Wilson County School Bd.*, 17 EHLR 676 (M.D.Tenn.1991).

The court concludes that the public interest in this case also weighs in favor of denial of the stay and the granting of the preliminary injunction. The Board has not demonstrated that lifting the stay and compelling it to pay F.C.'s remaining tuition and transportation costs will have the dire financial consequences it predicts. In fact, it is hard to imagine that it would, where the payment at issue is presently $12,115.00[12] out of a budget of $10,260,517.00. (M.C. and R.C. Supp. Cert., Ex. A.) Furthermore, there is a strong public interest in enforcing the orders of administrative law judges and seeing that the Board complies with its duty under the Rehabilitation Act to provide a free appropriate education to its learning disabled students.

#### 5. Security Bond

■ In the event the court denies the Board's motion for a stay and issues a preliminary injunction in favor of the Cs, the Board asks the court to order the Cs to post a bond in the full amount of the cost of F.C.'s tuition and transportation expenses. The Board argues that the posting of a bond in the full amount will protect the Board in the event it is successful on this appeal. The Cs respond that they have inquired into the possibility of posting a bond, but are simply financially incapable of doing so. (M.C. and

---

**11.** A decision to stay the ALJ's mandate that the Board reimburse Hill Top School would also harm a third party, namely Hill Top itself, which has provided educational services to F.C. that the ALJ has carefully scrutinized and found to be acceptable. Hill Top should not be required either to dismiss F.C. or await payment for valuable educational services rendered.

**12.** At the hearing, counsel for the Cs agreed that her clients would not suffer irreparable harm if immediate reimbursement of their *past* expendi-

tures were not ordered *pendente lite*. Although the ALJ ordered full reimbursement, and the Cs may win full reimbursement if they prevail upon the merits herein, the amount in dispute that is required to be paid by the Board to Hill Top to avoid irreparable harm is reduced to $12,115.00 through the end of the current school year. *See supra* n. 10. Since the merits of the appeal will be resolved on cross-motions for summary judgment returnable before me in June 1998, a final decision is anticipated prior to commencing the 1998–99 school year.

R.C. Supp. Cert. ¶ 2.) The court accepts their certification.

Under Fed.R.Civ.P. 65(c), a court generally may not issue a preliminary injunction unless the party seeking the injunction provides security bond in the event the injunction is later found improper, as the rule on its face admits no exceptions. *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 210 (3d Cir.1990). There are situations, however, where the bond requirement may be waived. *Temple Univ. v. White,* 941 F.2d 201, 219 (3d Cir.1991), *cert. denied sub nom. Snider v. Temple Univ.,* 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992). The Third Circuit has held that in determining whether to waive the bond requirement, the district court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant. *Id.* The court should also consider whether the applicant seeks to enforce a federal right and, if so, whether imposing the bond requirement would unduly interfere with that right. *Id.* at 220. Thus, a narrow exception to the Rule 65(c) bond requirement may be recognized in non-commercial and public interest cases. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 803 n. 8 (3d Cir.1989). In this case, the Cs are seeking to enforce F.C.'s rights under a federal statute, the Rehabilitation Act. The Cs have also demonstrated that they cannot afford to post a bond in the amount of F.C.'s remaining unpaid tuition and transportation costs, which the Board currently owes under the ALJ's order. It would be especially ironic if the prevailing party's financial inability to post a security bond deprived it of the very benefits of preliminary injunctive relief to which it has demonstrated entitlement under the Rehabilitation Act. Finally, the Board has not shown that it will suffer substantial losses if a decision compelling it to comply with the ALJ's order is ultimately reversed, since presumably the Board could seek reimbursement from the Cs in the rather unlikely event the ALJ's decision is reversed. Therefore, the court concludes that the security bond requirement of Fed.R.Civ.P. 65(c) should be waived in this case due to extraordinary circumstances.

### III. *Conclusion*

The Board's motion for a stay of the Decision of the Administrative Law Judge dated November 13, 1997, will be denied. The motion of the parents of F.C. for a preliminary injunction enforcing the ALJ's Decision requiring the Board to reimburse the Cs for their past tuition payments to Hill Top Preparatory School and to make payment pending final determination of the appeal is granted in part, and the Board shall be ordered to make payment to Hill Top of tuition on behalf of F.C. in the amount of $11,115.00 within fifteen (15) days hereof, and to make payment to the parents of F.C. for remaining transportation expenses in the amount of $1,000.00 within fifteen (15) days hereof. The requirement for the Cs to post a preliminary injunction security bond under Fed. R.Civ.P. 65(c) is waived, as explained above.

The accompanying Order is entered.

### ORDER FOR PRELIMINARY INJUNCTION

Upon motion of Defendant/Counterclaimant F.C., a Minor, through his Parents, R.C. and M.C., for preliminary injunctive relief to compel Plaintiff/Counter–Defendant Borough of Palmyra Board of Education to comply with the Decision of New Jersey Administrative Law Judge Joseph Fidler (OAL Dkt. No. EDS 11898–96, Agency Dkt. No. 97–8127) dated November 13, 1997; and

Upon cross-motion of the Plaintiff/Counter–Defendant Borough of Palmyra Board of Education to Stay the Decision of November 13, 1997; and

Having considered all submissions and arguments of counsel at a hearing on April 17, 1998, and for good cause for reasons stated in this court's Opinion of today's date;

IT IS this 22nd day of April 1998 hereby

ORDERED AND ADJUDGED that the motion of F.C. for preliminary injunctive relief to enforce the Decision of the ALJ dated November 13, 1997, shall be, and hereby is, **GRANTED IN PART** and the Borough of Palmyra Board of Education is hereby **OR-DERED** to make payment of unpaid tuition to Hill Top Preparatory School on behalf of F.C. in the amount of $11,115.00, and to

make payment of remaining transportation expenses to the parents of F.C. in the amount of $1,000.00, within fifteen (15) days hereof; and it is

FURTHER ORDERED AND AD-JUDGED that the motion of F.C. for preliminary injunctive relief to require the Board to make immediate reimbursement to the parents of F.C. for their previous payments of tuition and transportation expenses in the amount of $20,570.42 shall be, and hereby is, **DENIED IN PART**, without prejudice to an award of such reimbursement if F.C. succeeds upon the merits of this case; and it is

FURTHER ORDERED AND AD-JUDGED that the cross-motion of the Borough of Palmyra Board of Education, for a stay of the ALJ's Decision of November 13, 1997, shall be, and hereby is, **DENIED**; and it is

FURTHER ORDERED that the requirements for posting a security bond by F.C. pursuant to Fed.R.Civ.P. Rule 65(c) shall be waived; and it is

FURTHER ORDERED that this appeal from the Decision of the ALJ dated November 13, 1997, be set down for final hearing on the merits upon cross-motions for summary judgment on **Monday, July 6, 1998, at 2:00 P.M.,** and that briefing by Plaintiff and Defendant be completed so as to be filed in their entirety with the Clerk under the procedure of L. Civ. R. 7.1(f) not later than June 19, 1998.